# SUPREME COURT.

THEODORE H. MEAD agt. HIPPOLITE MALI and OTIS P. JEWETT, impleaded with STACY.

## CASEAUX agt. SAME, and two other causes.

Where the plaintiff in the first count in his complaint against the defendants, who were president, vice-president and treasurer of the Parker Vein Coal Company, alleged that the company were authorized to issue stock to the amount of $3,000,000, in shares of $100 each; that the stock at the time of the acts complained of, was worth par in the market, or nearly so, and in its intrinsic value, and that but for the acts of the defendants it would have continued to be so; that the plaintiff purchased 200 shares of the stock between 27th of October, 1853, and 25th of February, 1854, and still owned the same; that at that time the company's property was worth at least $3,000,000; that the defendants fraudulently issued 128,000 shares of the stock beyond what the company was authorized to issue, and realized from the sale $1,300,000, which they converted to their own use; and that by this over-issue the genuine stock was rendered valueless, and became unsaleable in the market; and the plaintiff's shares had been rendered thereby wholly unsaleable and valueless.

*Held,* that by the decision of the court of appeals, the company was not liable for the stock thus over-issued. This count was not therefore liable to the objection that the *company* should sue for the wrong.

*Held,* also, that on the allegation that by the acts of the defendants the stock had become *valueless* to the plaintiff; and not averring what the plaintiff paid for the stock, the objection was one not to be taken by *demurrer*, but on a motion to make the complaint more definite. Then it would result that by the fraudulent acts of the defendants they had made the stock of the plaintiff valueless to him. This was an injury which was peculiar to the plaintiff, as regarded the stock owned by him. He could not join the other stockholders with him, because they did not own the shares of their stock jointly, but separately.

Where in the second count of the complaint, the plaintiff alleged that at the times of the purchase of the stock, the defendants made false representations respecting the character and value of the stock, and the then position of the company; representing that the affairs of the company were in a good and prosperous condition, and wholly withholding and concealing from the plaintiff the fact that they had theretofore, and were then making the over-issues of stock; that the defendants made such false statements for the purpose of inducing various parties, and particularly the plaintiff, to purchase largely of the stock; that the plaintiff was influenced thereby in making the purchases, and did not know of

the over-issue, and that by such over-issue the shares of the stock had become valueless to the plaintiff.

*Held,* that this count was for a false representation, made not (as was common) to the *seller* of goods, but to the *buyer* of property. To sustain it, the same facts must concur as in an action for a false representation of the credit of a buyer. The representation must be false in fact and so known to the defendants—must have been made with the intent to deceive the plaintiff, and must have produced that effect, and have caused loss to the plaintiff; and the pleading must state what the false representation was.

*Held,* also, that it was not essential that the representation should be addressed directly to the plaintiff. If it were made with the intent of its influencing every one to whom it might be communicated, or who might read or hear of it, the latter class of persons would be in the same position as those to whom it was directly communicated; but they must have come to a knowledge of it before their purchase.

In all such cases, it is essential that the false representation, or the concealment which made the partial statement practically false, should be made with the intent to deceive.

*Held,* on the assumption that everything stated in this count, although improperly stated, was true, and applying the rules stated to such cases, there could be but little doubt of the defendants' liability. Although good on demurrer, it was so indefinite as to require amendment in the particulars indicated.

The third count alleged the purchases of the stock by the plaintiff, and the over-issue of the stock, both before and after the plaintiff's purchases; that the certificates for the unlawful stock were similar to those for the lawful; and that the plaintiff believing them to be certificates of lawful stock, purchased 200 shares of them, and paid large sums for them, and that he afterwards discovered that they were spurious.

*Held,* that this loss was clearly individual to the plaintiff. The objection that he did not allege that he bought of the defendants, and that he had his remedy against the seller of the stock, was not well taken, because, at common law a tort feasor when sued could not plead the non-joinder of his co-tort feasors. The principle of the rule was, that the wrongdoer was not entitled to the aid of a court to call on others to constitute and bear a part of the penalty for which he also was liable for his wrong-doing. Much less could he say, when sued, that there was another party, who was entirely innocent, but whom he had deceived, and who in consequence had innocently transferred what he supposed to be of value to the plaintiff, and that the plaintiff must therefore have recourse to that person, and not to the wrongdoer himself.

Nor is the objection valid that the defendants if guilty, are liable to the person to whom they sold the property, and that a cause of action for a tort cannot be assigned. Because first, the first purchaser may have passed the stock away for its full value, and so have suffered no loss; he assigns then not the tort, but the stock, to the present plaintiff, and the present plaintiff is the first person who suffers any loss by the fraud: Second, the spurious certificates were

the acts of the defendants; (in this unlike the defendants in the *New Haven R. R. Co. case*,) by the certificates the defendants (not the company,) represented to every person who received them that they were genuine; and this representation they made as much to the plaintiff as to the original purchaser. Third, these certificates pass by a power of attorney in blank as to the name of the purchaser, the defendants so passing them, authorized the insertion of the name of the plaintiff as the immediate purchaser from them, or from their agent, and made him thus the immediate contracting party with them. This count held good. As the causes of action were all founded in tort, the several counts were properly joined.

*New - York Special Term, January,* 1857.

DEMURRER to complaint, as not containing cause of action, and for misjoinder.

F. DOMINICK *and* M. S. BIDWELL, *for plaintiffs.*
J. M. VAN COTT, *for defendants.*

MITCHELL, Justice. There are three counts in the complaint. The first count shows that the Parker Vein Coal Company were authorized to issue stock to the amount of $3,000,000, in shares of $100 each; that the stock at the time of the acts complained of, was worth par in the market, or nearly so, and in its intrinsic value, and that but for the acts of the defendants it would have continued to be so. That Mali was president of the company, Jewett vice-president, and Stacy director and treasurer.

That the plaintiff purchased 200 shares of the stock, between the 27th of October, 1853, and 25th of February, 1854, and still owns the same; that at that time the company's property was worth at least $3,000,000; that the defendants fraudulently issued 128,000 shares of the stock, beyond what the company was authorized to issue, and realized from the sale $1,300,000, which they converted to their own use; and that by this over-issue the genuine stock was rendered valueless and became unsaleable in the market, and the plaintiff's shares have been rendered thereby wholly unsaleable and valueless. By the decision in the court of appeals, the company is not liable for the stock thus over-issued. This count is not therefore

liable to the objection that the company should sue for the wrong.

The count does not show what the plaintiff paid for the stock, whether par or so small a sum that his damages must be nominal, if they are to be limited to the deterioration in value which arose after he became the purchaser, as is most probably the true rule; but it shows that by the acts of the defendants the stock has become *valueless* to the plaintiff. This objection, therefore, is one not to be taken by demurrer, but on a motion to make the complaint more definite. Then it results that by the fraudulent acts of the defendants, they have made the stock of the plaintiff valueless to him, and have put in their pocket the value in money of which they have deprived him. This is an injury which is peculiar to this plaintiff, as regards the stock owned by him. He could not join the other stockholders with him, because they do not own the shares of their stock jointly but separately. Each owns his own shares separately, and each sustains his separate loss on his own stock. It is said that the depreciation in the stock was caused by the mistaken opinion of the public, that the spurious stock must be assumed by the company. No such fact appears on the pleadings, and if the fraudulent act of one party causes an injury, which could not be complete but for the concurrent ignorance of the public, the wrong still exists and the consequent damage, and as there is but one wrongdoer, he should make amends for the consequences of his own wrongful acts. That count must therefore be deemed good.

The second count states the ownership of the stock as before, and that at the times of the purchase of the stock, the defendants made false representations respecting the character and value of the stock, and the then position of the company; representing that the affairs of the company were in a good and prosperous condition, and wholly withholding and concealing from the plaintiff, the fact that they had theretofore and were then making the over-issues of stock; that the defendants made such false statements for the purpose of inducing various parties, and particularly the plaintiff, to pur-

Mead agt. Mali and Jewett.

chase largely of the stock; that · the plaintiff was influenced thereby in making the purchases, and did not know of the over-issue ; and that by such over-issue the shares of the stock have become valueless to the plaintiff.

This is a count for a false representation made, not (as is common) to the *seller* of goods, but to the *buyer* of property. To sustain it, the same facts must concur as in an action for a false representation of the credit of a buyer. The representation must be false in fact, and so known to the defendants— must have been made with the intent to deceive the plaintiff, and must have produced that effect, and have caused loss to the plaintiff; and the pleading must state what the false representation was. . It is not essential that the representation should be addressed directly to the plaintiff. If it were made with the intent of its influencing every one to whom it might be communicated, or who might read or hear of it, the latter class of persons would be in the same position as those to whom it was directly communicated, but they must have come to a knowledge of it before their purchase. If the defendant alleged as true of his own knowledge, what he may possibly have supposed to be true, but which was untrue in fact, and did this with the intent to deceive, it is deemed the same as if he knew it to be untrue. He is under no obligation to communicate anything to one not purchasing directly from him, but if he begins to communicate and makes a statement, which is true as far as it goes, but which misleads, because he conceals a fact which he knows, and which if communicated, would have prevented a purchase, and he does this with a view to deceive the purchaser, he is under the same responsibility as if he had made a wilfully false statement as to the matter thus concealed. The rule is saved from too great laxity in all these cases, by one indispensable part of it, namely, that in all cases it is essential that the false representation, or the concealment which made the partial statement practically false, should be made with the intent to deceive. (*See Addington* agt. *Allen, in court of errors.*) By these rules this count is to be tested. It states that the defendants made false representations respect-

ing the value, &c., of the stock.    If it had stopped here, it would have been demurrable as not showing what the representations were ; and on the trial of this case nothing can be proved under that part of the count alone ; but it proceeds and states what the representations were, and limits the generality of the previous clause by a special statement, " representing that the affairs of the company were in a good and prosperous condition, and concealing from the plaintiff the fact " of the over-issues.   It is not alleged to whom this representation of the condition of the company was made, nor directly that it came to the knowledge of the plaintiff, but indirectly it may be inferred that it did come to his knowledge, for the count states that the plaintiff was *influenced* thereby in making the purchases ; he could not have been influenced by the representations, if they had not been in some way reported to him. On demurrer this may be deemed sufficient.   (*See opinion of* DENIO, *J., in court of appeals, in Zabriskie* agt. *Smith,* 3 *Kernan,* 330.)

According to this count with this inference in its favor, the defendants made a representation, (it is enough if it was in a newspaper intended to be read by dealers in stock, and to influence them to purchase, and that it was so read by the plaintiff and did so influence him,) that the company was in a prosperous condition, and yet concealed the fact that they had made large over-issues of stock, which they must have known would impair its value; and they must also have known that the purchaser would have regarded the actual statement as false if the fact concealed had been known by him.

Taking into consideration the rules already stated, and that the case is the same as if the defendants had gone to the plaintiff and asked him to buy the stock, telling him that the company was in a prosperous condition, thus professing to enlighten him as to its true condition, and yet withholding from him the knowledge of their wrongful acts, which they knew would reduce the value of the stock, and that this was done with the intention to deceive, and there can be but little

Mead agt. Mali and Jewett.

doubt of the defendants' liability. This is on the assumption that everything stated in the count, although improperly stated, is true; on a trial, it may turn out, that one or more of the defendants, had no knowledge of the facts that there was an over-issue, or that the company was not entirely prosperous, and that he or they had no intent to deceive.

This count appears to be good on demurrer; but it is so indefinite, that it should be amended. It should clearly show whether it depends on any false representation, except that resulting from the concealment; also, in what manner that representation was made—as whether orally, or in writing—and how it came to his knowledge, and distinctly allege that the representation came to the plaintiff's knowledge before his purchase, in whole or in part, and when it was made, and what amount of stock he bought after that time. It should be borne in memory, that this count places concealment and falsehood, in these cases, on the same level; it should, therefore, especially avoid the holding back of any fact, or any distinct and full statement connected with the cause of action, which, if fairly disclosed, would show that no cause of action really existed.

The third count alleges the purchases of stock by the plaintiff, and the over-issue of the stock, both before and after the plaintiff's purchases; that the certificate for the unlawful stock, was similar to those for the lawful, and that the plaintiff believing them to be certificates of lawful stock, purchased two hundred shares of them and paid large sums for them, and that he afterwards discovered that they were spurious.

This loss is clearly individual to the plaintiff. It is said that he does not allege that he bought of the defendants, and that he has his remedy against the seller of the stock. At common law a tort feasor, when sued, could not plead the non-joinder of his co-tort feasors. It was said that the tort was joint and several, but the principle of the rule lay deeper; it was that the wrongdoer is not entitled to the aid of a court, to call on others to contribute and bear a part of the penalty,

for which he also was liable for his wrong-doing. Much less can he say, when sued, that there is another party, who is entirely innocent, but whom he has deceived, and who, in consequence of his deception, has innocently transferred what he supposed to be of value, to the plaintiff, and that the plaintiff must, therefore, have recourse to that person and not to the wrongdoer himself.

It is also said that the defendants if guilty, are liable to the person to whom they sold the property, and that a cause of action for a tort cannot be assigned. To this there are several answers. The first purchaser may have passed the stock away for its full value, and so have suffered no loss; he assigns, then, not the tort, but the stock, to the present plaintiff, and the present plaintiff is the first person who suffers any loss by the fraud. The spurious certificates were the acts of the defendants, (in this unlike the *defendants* in the *New-Haven Railroad Company case ;*) by the certificates the *defendants* (not the company) represented to every person who received them, that they were genuine; and this representation they made as much to the plaintiff, as to the original purchaser.

Again; these certificates pass by a power of attorney in blank as to the name of the purchaser; the defendants so passing them, authorized the insertion of the name of the plaintiff as the immediate purchaser from them or from their agent, and made him thus the immediate contracting party with them. This count, therefore, is also good.

The action is well brought against three. They could all join in every act alleged against them; the representations made by them may have been in writing and in print and signed by each; the certificates of stock may have been signed by all or by two, and issued by the third in common with the others. As the causes of action are all founded in tort, the several counts are properly joined.

The demurrers must be overruled, with leave to the defendants to answer without payment of costs, unless the plaintiffs elect to amend, and make their complaint more definite in the matters above stated, but with like leave, on payment of costs

of the demurrer, on his making such amendment. The issue to be as of the time of serving the demurrer.[1]

[1] This decision was affirmed on appeal at the New-York general term, in December, 1857. MITCHELL, DAVIES and PEABODY, *Justices*. PEABODY, *J.*, dissenting.