ROBERT H. FENN, PLAINTIFF, *v.* PHILIP H. CURTIS AND OTHERS, DEFENDANTS.

*Fraudulent representations — liability of one falsely representing himself to be an officer of a corporation when no corporation in fact exists.*

After the defendants and others had held a preliminary meeting with a view to forming a manufacturing coporation for the purpose of making and selling artificial stone, but before any articles of association had been prepared and filed as required by law, three of them issued circulars, signed by them as president, vice-president and secretary, respectively, stating that the Rochester Frear Stone Company had been organized for the aforesaid purposes with the necessary capital, and that they had been chosen to the offices above named. After the issue of these circulars the plaintiff purchased from the defendant McConnell certificates, purporting on their face to be shares of the capital stock of "The Rochester Frear Stone Company," believing that they represented shares of the stock of the said company, and that the same was duly organized under the laws of this State.

In an action by the plaintiff to recover damages for the fraudulent statement of the defendants, whereby he was induced to purchase the pretended certificates of stock:

*Held*, that the acts of the defendants in assuming to be and to act as the officers of a duly incorporated company, and in issuing certificates of the capital stock thereof, contributed largely to enable McConnell to sell the pretended certificates to the plaintiff, and rendered them liable to him for the damages

thereby sustained, irrespective of any intent on their part to defraud him in particular.

That it was not necessary to show that the defendants were interested in the sale of the stock by McConnell, or that they were in collusion with him.

That the allegation contained in the complaint that the representation was made to the plaintiff was proved by the fact that it was contained in the circular, signed by the defendants and generally distributed, as well as by the statements contained in the certificates of stock issued by the so-called company, with the knowledge and consent of the defendants.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict directed in favor of the plaintiff.

The complaint alleged that the defendants, for the purpose of cheating and defrauding the plaintiff, represented that they were officers of a company known as the Rochester Frear Stone Company; that said company had been duly organized and incorporated, and that the capital stock subscribed was $200,000; that there was no such company; that the representations were false, and were made with intent to deceive plaintiff and to induce him to purchase shares of stock, and that the shares of stock were spurious and worthless; that the plaintiff did purchase of the defendant McConnell sixty shares of the said company's stock, and paid therefor in all $2,100, in three purchases, and did so relying upon the representations made by the defendants, and that plaintiff sustained damage in the sum of $2,100 and interest, from the date of the respective purchases, for which judgment was asked.

The certificates of stock were in the following form:

"CAPITAL, $200,000.    { U. S. Stamp, }
                        { Int'l Rev.   }

"*Organized under the Laws of the State of New York. The Rochester Frear Stone Company No.* 15. *Ten Shares.*

"This is to certify that Robert H. Fenn is entitled to ten shares of one hundred dollars each in the capital stock of the Rochester Frear Stone Company. Transferable personally, or by attorney, on the books of said company, accompanied by the surrender of this certificate.

"ROCHESTER, N. Y., *August* 9, 1871

"P. H. CURTIS, *Sec. and Treas.*

"C. H. MASON, *President.*"

"For value received, I hereby assign and transfer unto
shares of stock of this company, and authorize and request the
same to be transferred on the books thereof."

A circular was also issued by the defendants, which states among
other things as follows, viz:

> "OFFICE OF THE ROCHESTER FREAR STONE CO.,
> "No. 58 BUFFALO ST., POWERS' BUILDINGS,
> "WORKS COR. WEST AVE. AND CANAL ST., ROCHESTER, N. Y.

"This company is organized under the laws of the State of New
York, for the purpose of manufacturing and selling artificial stone,
under the patents granted by the United States, February 4, 1868,
to George A. Frear, of Chicago.      *      *      *

"The officers of the company will take pleasure in exhibiting, at
their office, specimens of the Frear stone as well as photographs of
buildings constructed of the stone, which have been erected in
Chicago, Toledo, Buffalo, New Orleans, etc., during the last three
years, together with the certificate of architects and capitalists in
those cities.

> "C. H. MASON, *President,*
> "EDGAR HOLMES, *Vice-Pres't,*
> "P. H. CURTIS, *Sec. and Treas.*"

Evidence was given tending to show that about, or prior to the
month of April, 1871, the defendants and others had purchased a
certain patent right of a process of making an article of merchan-
dise known as an artificial stone called Frear stone, and proposed to
organize a company to manufacture the article for building pur-
poses; that the parties had a meeting at the house of Arestarchus
Champion, at which time officers were elected, a certificate drawn
and signed by all, except Mr. Champion who was soon after taken
sick, and the certificate remained in that condition until it was (after
Champion's death) filed in the Monroe county clerk's office, and also
in the proper office in Albany.

In February, 1873, a new certificate was drawn, signed and duly
filed. The company recognized the stock certificates as valid which
were issued prior to such filing in February, 1873.

*J. S. Garlock,* for the defendants. In order to maintain an action for deceit by means of false representations, it is always necessary to aver and prove an intent to deceive, and whenever a party actually believes what he asserts to be true, he is not liable, although it turns out that what he affirmed was false in fact. ( *Weed* v. *Case*, 55 Barb., 534, 547; *Wakeman* v. *Daley*, 51 N. Y., 27; *Bennett* v. *Judson*, 21 id., is criticised and questioned; *Chester* v. *Comstock*, 40 id., 575, 576, *note; Marsh* v. *Falker*, 40 id., 562; *Nelson* v. *Luling*, 46 How., 355.) These defendants, Curtis, Mason and Holmes, did not sell any stock or shares to plaintiff; the proper officers, Mason, president, and Curtis, secretary, simply at request of McConnell, signed a certificate or script, which was merely evidence given to Fenn of his existing right in their company's property. (*Burr* v. *Wilcox*, 22 N. Y., 551; *Kelsey* v. *Northern L. O. Co.*, 45 id., 505.) The plaintiff should not be allowed to rescind five years after he bought his stock, and when he did not offer to do so until more than five years after he discovered that no such company was organized. (*Taylor* v. *Fleet*, 4 Barb., 95; *Emmet* v. *Reed*, 8 N. Y., 312; *Van Kleeck* v. *Le Roy*, 37 Barb., 544; *Ketletas* v. *Fleet*, 7 Johns., 324; *Bronson* v. *Winan*, 10 Barb., 406; S. C., 8 N. Y., 182; *Cobb* v. *Hatfield*, 46 id., 533; *Lidsley* v. *Ferguson*, 49 id., 623; *Hunt* v. *Singer*, 1 Daly, 209.)

*H. H. Woodward*, for the plaintiff. The false representations of the incorporation of the company moved the plaintiff to make the purchases of stock, and without them he would not have purchased it. And it was not necessary to show that the defendants were benefited by them, or in collusion with the party so benefited. (*Hubbard* v. *Briggs*, 31 N. Y., 518; *Craig* v. *Ward*, 36 Barb., 378; *Bennett* v. *Judson*, 7 E. P. Smith, 238; *Cross* v. *Sackett*, 6 Abb. Pr., 247; 2 Bosw., 617; 16 How. Pr., 62; *Mead* v. *Mali*, 15 id., 347; *Herod* v. *Rodman*, 16 Ind., 241.)

TALCOTT, P. J.:

This is an action against the defendants for defrauding the plaintiff, by inducing him to purchase certain pretended certificates of stock in a certain pretended company known as "The Rochester Frear Stone Company," which the defendants as officers of the

said pretended company, represented was duly organized and *incorporated* under the laws of the State of New York; whereas there was in fact no such corporation, and the pretended shares of stock in said corporation had no existence in fact, and the certificates thereof were spurious and worthless.

The trial was had at the Monroe Circuit and at the close thereof the trial judge directed a verdict for the plaintiff for the amount which he had paid for the said certificates to one of the defendants, McConnell (who did not answer in the case), with interest from the time of payment, and ordered the exceptions to be heard at the General Term in the first instance.

It was shown that there was no such incorporation at the time when the plaintiff was induced to and did purchase the certificates of shares. The evidence showed that the defendants and others had had a preliminary meeting with a view to forming an incorporation under the manufacturing laws, but that accidently or otherwise, no certificate such as is required by the law which authorizes the formation of corporations for manufacturing purposes was at that time signed, acknowledged or filed; nevertheless the parties assumed to be a company and elected officers and opened an office and issued circulars advertising their business.

The circulars issued were signed by the defendant Mason as president, Holmes as vice-president, and Curtis as secretary of the said company. The circular stated that the company was "organized under the laws of the State of New York for the purpose of manufacturing and selling artificial stone under the patents granted by the United States, February 4, 1868, to George A. Frear, of Chicago." The circular also stated that a company was organized at Rochester with the necessary capital to manufacture the Frear stone at that place, and that the defendants (with the exception of McConnell) were chosen to the offices named as the officers thereof, and set forth numerous facts calculated to show that the said "Rochester Frear Stone Company" was likely to be engaged in a thriving and prosperous business.

The circular, so far as appears, was without date, but was shown to have been issued and generally distributed before the time when the plaintiff purchased from McConnell the pretended shares in question. The certificates of stock which were issued and pur-

chased by the plaintiff, on their face purported that the company was organized under the laws of the State of New York, and purported to be certificates of shares of the capital stock of an incorporated company. The defendants moved for a nonsuit on the ground that the plaintiff had not made out any cause of action against the defendants who had answered, and also at a subsequent stage of the case asked leave to submit to the jury the question of "fraud and of the intent of the parties," by which we understand that the defendants claimed that they had no intention of defrauding the plaintiff, or any other person, by the pretense that there was an existing corporation known as the "Rochester Frear Stone Company," or that they were officers in such corporation, and that they desired to have that question submitted to the jury.

The court denied the motion for a nonsuit, and refused to submit the question as to the intent to defraud, to the jury. The court holding, as appears from its intimations in the case, that the assumption by the defendants to be incorporated under the name of the "Rochester Frear Stone Company," and to issue certificates of stock in such a corporation, when, in fact, there was no such corporation, was in and of itself a fraud, which made them liable to such persons as should thereby be induced to purchase the fictitious stock, irrespective of any intent to defraud the plaintiff in the case.

We think the views of the trial judge as to the liability of the defendants were correct, and their liability was irrespective of any fraudulent intent to injure the *plaintiff in particular*.

Assuming to be and to act as the officers of a duly incorporated company, and issuing certificates of capital stock of the pretended corporation, they being aware of the fact that the corporation had no legal existence, most certainly contributed in a large degree to enable McConnell to accomplish the fraud in selling shares of the pretended stock to the plaintiff, who testified in effect, that at the time of the purchase of the stock he believed that the Rochester Frear Stone Company was duly organized under the laws of the State, and would not have purchased the stock unless he had so believed. (See *Cross* v. *Sackett*, 6 Abb. Pr., 247; S. C., 2 Bosw., 617, and 16 How. Pr., 62; *Mead* v. *Mali*, 15 How. Pr., 347; Addison on Torts, 1009, 1010, 1011; *Scott* v. *Dixon*, 29 L. J.

[Ex.], 62; *Bedford* v. *Bagshaw*, id., 64, note; *Warner* v. *Daniels*, 1 W. & M., note 90.)

The statute authorizing the formation of manufacturing corporations, contains certain provisions in reference to the actual payment of the capital represented by the shares of stock, and other provisions upon which the purchaser of stock in such a corporation has a right to rely, as tending to the security of his investment.

It was not necessary to show that the defendants were interested in the sale of the stock by McConnell or that they were in collusion with him. (*Hubbard* v. *Briggs*, 31 N. Y., 518.) The allegation that the representation was made to the *plaintiff* was proved by the fact that it was contained in the circular signed by the defendants and generally distributed, as well as by the statement contained in the certificates of stock issued by the so-called company, with the knowledge and assent of the defendants.

The trial judge stated to the counsel at the close of the case that he would allow the counsel to go to the jury upon any question of fact which was disputed, but the counsel for the defendants did not in any way avail themselves of the invitation. Under it they might have had submitted to the jury, if they conceived that the evidence left any serious doubt on the subject, the question whether the language used by the defendants in their circular and certificates of stock imported a representation that the "Rochester Frear Stone Company" was a duly incorporated company, and whether the language used by them in their circulars and in their certificates of stock was designed or calculated to induce purchasers to believe that such was the fact. Or, they might have had submitted to the jury the question, upon which there appeared to be some conflict of evidence, whether the plaintiff recognized "The Rochester Frear Stone Company," which was subsequently incorporated, as in effect the same company in which he had purchased the stock, by attending and taking part in its meetings, etc.

The numerous exceptions taken in the course of the trial, to which our attention has been called, are answered by the views we have hereinbefore expressed as to the general merits of the case, or are so unimportant that substantial justice does not require that a new trial should be granted by reason thereof.

We therefore order that a new trial be denied and that judgment be entered for the plaintiff on the verdict.

HARDIN, J., concurred; RUMSEY, J., not sitting.

Ordered accordingly.